(142 App. Div. 811.)

PHILPOT v. FIFTH AVE. COACH CO.

(Supreme Court, Appellate Division, First Department. February 10, 1911.)

1. TRIAL (§ 41*)—SEPARATION OF WITNESSES—DISCRETION OF COURT.

    An application to exclude the witnesses from the courtroom during the trial is addressed to the discretion of the trial court, and, in an action for injuries to a pedestrian on a sidewalk struck by an automobile omnibus, the court should at the request of either party exclude the witnesses; it being important that a person's impression of the occurrence should be stated, uncolored by what he heard others testify to.

    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 101–105; Dec. Dig. § 41.*]

2. TRIAL (§ 115*)—INSTRUCTIONS—REQUESTS—SUFFICIENCY.

    Where, in an action for personal injuries negligently inflicted by defendant's chauffeur in operating an automobile omnibus, the court in its charge did not state what was sufficient to charge the chauffeur with negligence, nor what act or omission would warrant a finding of negligence, defendant was entitled to requested instructions properly submit-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ting such issues, without comment from plaintiff's counsel destroying the effect of the instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 279–283; Dec. Dig. § 115.*]

3. TRIAL (§ 115*)—IMPROPER CONDUCT OF COUNSEL.

The act of plaintiff's counsel in insisting on a requested charge which the court considered was not law, and in insisting on the court changing its charge, and in stating in the presence of the jury that it did not make any difference whether the court charged the request or not, was improper as tending to divert the minds of the jury, so that it was possible that defendant did not have the benefit of the law in the instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 279–283; Dec. Dig. § 115.*]

4. MUNICIPAL CORPORATIONS (§ 706*)—STREETS—INJURIES—EVIDENCE.

Plaintiff suing for a personal injury negligently inflicted in the operation of an automobile omnibus must show either that the chauffeur was negligent in the operation of the machine in omitting some act which a prudent person would have done, or did some act which a prudent person would not have done, or that in some other respect defendant or its agents were negligent.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 706.*]

5 MUNICIPAL CORPORATIONS (§§ 705, 706*)—INJURIES TO PERSONS ON SIDEWALKS—NEGLIGENT OPERATION OF AUTOMOBILES.

Where, in consequence of its size, the motive power used, and the condition of the pavement, an automobile omnibus could not be controlled so as to prevent injury to persons on the sidewalk caused by skidding of the machine, the question of the negligence of defendant operating the machine was for the jury, and, if they found that the machine could not by the exercise of due diligence be so regulated that it could not be kept from the sidewalk, thereby causing injury to people there, defendant was liable.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §§ 705, 706.*]

6. NEW TRIAL (§ 29*)—MISCONDUCT OF COUNSEL.

Where plaintiff's counsel in the examination of witnesses and in his argument to the jury and in his remarks to the court, while it was considering defendant's requests to charge, excited the prejudice of the jury, and defendant, though objecting, did not obtain any redress from the trial court, the verdict for plaintiff must be set aside and a new trial awarded.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 43, 44; Dec. Dig. § 29.*]

Appeal from Trial Term, New York County.

Action by Alice Philpot against the Fifth Avenue Coach Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, McLAUGHLIN, and DOWLING, JJ.

Theodore H. Lord, for appellant.
Thomas F. Keogh, for respondent.

INGRAHAM, P. J. On the 24th day of September, 1908, the plaintiff, while standing on the sidewalk on Fifth avenue and Forty-Fifth street, was run into by one of the defendant's coaches. She

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

received serious injuries which resulted in the amputation of her left leg, for which she has recovered a judgment from which the defendant appeals. The cause of action is based solely upon negligence. The complaint alleges that the plaintiff was, "solely through the negligence and carelessness of the defendant, struck by one of the aforesaid automobile stages or coaches then in charge of and operated and controlled by said defendant." The action being based upon negligence, the question whether the defendant would be liable as for a trespass is not presented. The proof shows that the plaintiff was standing on the sidewalk; that one of the large automobile stages owned and operated by the defendant approached; that the chauffeur in charge of this stage attempted to stop it, turning the front of the stage away from the sidewalk; that the rear wheel of the stage ran up against the curb, the extension of the stage sweeping over the sidewalk and either directly struck the plaintiff or struck a lamp post on the edge of the sidewalk, throwing the lamp post down upon the plaintiff.

After the court had disposed of an application for an adjournment and a jury had been selected, defendant's counsel moved to exclude all witnesses from the room during the trial. Plaintiff's counsel said he did not see any reason for that, that it was not necessary, and the court denied the motion, stating that:

"If there is any ground upon which to base a suspicion that any witness is predicating his testimony upon the testimony of another witness, it will be time to make the motion."

While such an application is in the discretion of the court, it is often extremely important that witnesses testifying to an accident of this character should be examined without having heard the testimony of other witnesses. What is important is that each person's impression of the occurrence should be stated, not suggested or colored by what he has heard others testify to; and for the court to refuse a request by counsel on either side to exclude all witnesses from the courtroom except the one under examination closely approaches an abuse of discretion. This motion having been denied, the plaintiff was examined as a witness, and other witnesses were called on her behalf. The plaintiff then rested, when the chauffeur who was in charge of this stage was called as a witness by the defendant. He had left the employ of the defendant some time before the trial, and was not, therefore, one of the defendant's employés at that time. So far as appears from this record, this witness seems to have fairly given his recollection of the accident. The only important fact in which he disagreed with the plaintiff was his testimony that he saw the plaintiff step down from the sidewalk as though to cross the street and then step back, that the stage struck the lamp post and broke it off; that it fell on the plaintiff; and that the automobile did not strike her. There was no question but that the injury was sustained by the plaintiff while standing on the sidewalk as the result of the automobile skidding and some portion of it coming up on the sidewalk. Plaintiff's counsel (who was not the counsel who argued the case in this court for the respondent) then commenced to cross-examine this witness in a most improper manner. The witness was interrogated about a report of the accident

that he had made to the defendant immediately after the occurrence. He stated that he had not seen the statement since he had written it, but the court allowed him to interrogate the witness as to its contents. Counsel for the plaintiff in framing his questions on the examination constantly stated the testimony of the witness incorrectly, and, when the witness was attempting to answer, interrupting with such remarks as:

"Keep right at it." "There is no chance. You have got to stick right to it."

When this was objected to, the court said to strike out the question, and, when counsel for the defendant stated that he wished to stop any future language of that kind, counsel for the plaintiff said, "I object to those speeches," when the court directed the trial to proceed. Again a question was asked, assuming that the witness had testified to a statement which he had not made, to which the witness replied, "I don't see how that could be," when counsel for the plaintiff stated, "That is as plain as a pike staff." When the witness attempted to answer that proposition, counsel quickly stated:

"No! No! No! Stick right to it. Keep right to the point. That is it. Six from one hundred is how much?"

That was objected to by counsel for the defendant, but the court directed the witness to answer. The witness had testified that the automobile did not hit the plaintiff, but that the automobile hit the lamp post, and the lamp post fell on the plaintiff, when counsel for the plaintiff stated:

"Well, Fitzpatrick, at the time you hit her she was on the sidewalk, wasn't she?"

To which he answered:

"I didn't hit her. The lamp post hit her."

When counsel for the plaintiff said:

"Of course, you didn't hit her; your automobile hit her."

Counsel for the defendant then objected, saying that the witness had not said that the automobile hit her, when counsel for the plaintiff said:

"He has no right to tell this witness what to testify to. All coaching must be done off the stand."

Counsel for the defendant replied:

"But this witness has not testified that the bus hit her."

To which counsel for the plaintiff stated:

"Yes, he did. He may change now after argument, but he said yes a minute ago."

Then a series of questions is asked of which the following is an example:

"And you were going so nice and slow and so easy that you tore down a metal post?"

Again:

"And although only three feet away from the curb, you started to skid 100 feet down, and then did not reach the curb? No, that is not what he said."

And the court said:

"Allow the witness to answer for himself. Wait until the question is finished, and do not interrupt the examination."

And then this question followed:

"Will you admit. and do not. pay any attention to any suggestion that you may get out of the objection?"

There was nothing in the testimony of this witness which justified such insinuations. On objections to questions by the defendant's counsel, the plaintiff's counsel would not allow even the objection to be stated, but injected:

"He coaches every time I come to it."

When the defendant's counsel stated that he wished to object to the question, assuming a state of facts not testified to by the witness, counsel interjected:

"Is not that a most dishonest objection. I am proving it, and he commenced to coach the witness."

The witness having answered the question, counsel for the defendant objected to being accused of dishonesty, stating that he was endeavoring to protect his client's interest, and the only observation of the court was:

"Strike out the remark."

These observations were again and again repeated. In rebuttal the plaintiff was called as a witness and asked a series of questions which the defendant unsuccessfully objected to on the ground that they were not in rebuttal, when counsel for the plaintiff says:

"Don't be bothering me, go away."

And, when counsel for the defendant objected to some of the exhibits being shown to the jury before he knew what they were, counsel for the plaintiff said:

"The idea of him trying to get around and blanket me."

The defendant stated to the court that:

"In view of counsel's repeated statements as they have been going on this record I want to take an objection and exception. I move your honor for a mistrial."

—stating as grounds of his motion for a mistrial the misconduct of counsel after the court had directed him to desist.

Subsequently, when a police officer called by the plaintiff in rebuttal was under examination and two pieces of paper had been used in the examination, counsel for the defendant asked that they be marked in evidence, when counsel for the plaintiff objected, stating:

"I object to that after he had been manipulating them."

The parties having rested, and counsel for the defendant having addressed the jury, counsel for the plaintiff commenced his address, which seems to have been taken down by a stenographer. He commences with a statement to the jury:

"It must be indeed an amazing thing to see how for three days a defense can be put in, in such a case, and you can figure up what chance you as pedestrians might have if you were struck by an automobile while you were in the middle of the street and happened to be crossing, when they can put up this kind of a defense when you are upon the sidewalk."

He then makes some perfectly irrelevant remarks about the defense which was attempted, and as to what would happen if a juror's wife or sister, or any other female relative had been knocked down by an automobile, and stated that he wanted to compliment the defendant's counsel; told the jury that, if they ever needed a lawyer to put in a defense when they did not have one, the defendant's counsel was the man; "if any one you know happens to be caught with the goods on, just exactly like a crook with a smoking revolver in his hand, or even with the stolen property in his pocket, right with it on, this is the lawyer." When the defendant's counsel objected to such observations about himself, the plaintiff's counsel said:

"What I mean by that is that it requires effrontery to stand up here for three days without a defense and defend and that is just exactly what this defendant— "

Again, on the defendant's counsel interposing, the plaintiff's counsel continued:

"I did not interrupt the gentleman. I did not care what he said. He could talk from now until doomsday. I don't know why he is offended while I am complimenting him. He is a real good lawyer where there is no defense, the best I ever saw."

Again the defendant's counsel objected, when the plaintiff's counsel proceeded:

"As near as I can figure out the defense, it did not injure the automobile at all, and it only took the woman's leg off. The automobile was not hurt much, but the woman has lost her leg; therefore they are not liable. That is about the way it reasons out."

He then said that the defendant was trying to capture one or two men on the jury by the reasoning of this polished lawyer and then find a small verdict in order to get away:

"That is what they are after. Don't let them fool you. They are in hopes that one or two jurymen will be carried away by this difference between tweedledum and tweedledee, and that he will stay around several hours until everybody is sweating and tired and will bring in a low verdict. There is nothing plainer to me. I know them, and I know the way they work."

Counsel then referred to Fitzpatrick, the chauffeur:

"Fitzpatrick is the man charged with neglect, and they admit to you that Fitzpatrick is the man charged with neglect, and they admit to you that Fitzpatrick is a liar, and a liar under oath is a perjurer."

To that defendant's counsel objected, and the court interrupts, "I see no ground for objection," to which defendant's counsel excepted. There is nothing in this record which justifies such a statement. No-

body admitted that Fitzpatrick was a liar or a perjurer, and for the court to say that he saw no ground for objection to such a statement to the jury is certainly surprising. Counsel for plaintiff then, after quoting from the chauffeur's testimony that he put his brakes on 100 feet from the accident and the wheel started to skid immediately after —a statement which is not at all contradicted by any testimony and not at all improbable—went on:

"Let them get out of that if they can. We have got them in chancery. It is just exactly as if we had them up against the wall and there was no way out. They know it. They know it is true,"
—with other comments of a similar character.

Counsel then commented on the statement which the chauffeur on cross-examination said he had made to the company, and continued:

"They got him to sign a statement within a few hours after that happened. Why was that? Why, if any time they called him to stand, and the poor fellow wanted to tell the truth and unbosom his conscience, they could hold it up to him and say, 'There is your statement.'"

The defendant's counsel objected to these remarks; but the plaintiff's counsel continued:

"There is only one part of this case which enrages me. I don't mind Fitzpatrick trying to lie out of it in the main; but when they try to tell you that this woman stepped down from the curb, and that she was on the north side of the pole and then stepped back—although it does not affect the legal aspect of this case—it positively enrages me to hear a foul attempt at perjury. The person who invented that foul lie is not fit to be allowed within a hall of a court of justice. It is the rawest and coarsest piece of work I have ever seen, and it is invented because it is in line with a decision that you have heard them reading to the judge—first find your decisions and then build up your facts."

And, when the defendant's counsel attempted to object to such a statement, plaintiff's counsel continued:

"The man who got up that lie is not fit to be allowed in the room."

When counsel for the defendant again objected and excepted. Plaintiff's counsel subsequently alluded to manufactured testimony, stating again and again that there was no defense. After asking the jury to find a verdict for the plaintiff for $50,000, he stated:

"From the way this case has been fought, I can say that this case will be appealed, no matter what you find."

To which counsel for the defendant also objected and excepted. This summing up consisted solely of abuse of the defendant's counsel and of the defendant's witnesses. There was no statement of the facts which counsel understood to be established and which established negligence.

After a trial, conducted by the plaintiff's counsel in the manner indicated, it was certainly essential that the jury should have been given by the court a clear statement of the questions which they were to decide and in some way indicate to the jury what it was necessary for the plaintiff to establish to entitle her to a verdict. The court, in charging the jury, stated that the plaintiff claims that "she was struck by an automobile stage in charge of and operated and controlled by

the defendant, and that she was thereby knocked down and sustained an injury"; that "her injury was due solely to the negligence and carelessness of the defendant, and not to any fault or negligence on her part which contributed to her injury." The court then left it to the jury to say generally whether the plaintiff was entirely free from any negligence which contributed to the injury; and then stated the claim of the plaintiff and the claim of the defendant's chauffeur; that "the burden of proving that the defendant was negligent, and that its negligence was the proximate cause of her injuries, rests on the plaintiff"; that "if the plaintiff has satisfied you by a fair preponderance of the credible evidence in the case that defendant was negligent, and that she herself was free from negligence, then you may come to the question of damages."

There was nothing in this charge from which the jury could gain an intelligent idea of what was necessary to be proved to establish the defendant's negligence. The court, having concluded its charge, asked whether there were any requests to charge, when the defendant's counsel attempted to ask the court to charge certain requests which he had handed up. The plaintiff's counsel then interrupts: "Do I understand they are going to except to your honor's refusal to charge the others?" The court in reply asked whether there were any of the plaintiff's requests to charge which he considered covered. The plaintiff's counsel said that he thought they were all covered, when the court said, "I understand that plaintiff's counsel consents to the court charging all the requests made by the defendant," to which counsel for plaintiff said, "Yes, sir," and to which the court replied, "The court, notwithstanding that, may refuse to charge some of them, and you may join in an exception to the court's refusal," in which counsel for the plaintiff acquiesced; and the court then said: "On the request of the defendant, and with the consent of the plaintiff, I charge you as follows." Two or three requests were then read to the jury, one of which was that the mere fact that the defendant's bus skidded "is of itself no evidence of negligence on the part of the defendant," when plaintiff's counsel requested the court to charge the third request, which the court charged:

"That the fact that it did skid and the distance over which it skidded may properly be considered by you in connection with all the other facts in the case in determining whether or not the chauffeur operated the car in an ordinarily prudent manner under the circumstances."

The defendant's counsel then asked the court to charge another request as bearing upon the one that he had just made at the request of the plaintiff's counsel, and the court said:

"Sit down and write it out, and I will consider it after I am through."

The court then read to the jury a number of the defendant's requests, announcing that the eighteenth request of the defendant was refused on the ground that he did not understand that to be the law. There were several of these requests which, if the law of the case, would have required the court to charge the jury expressly that there was no evidence of the chauffeur's negligence in the operation of this omnibus. The defendant's counsel then attempted to take some ex-

ceptions to the charge; counsel for the plaintiff interrupting in each case and insisting upon it that the court did charge the request to which counsel wished to except. Counsel for the defendant then excepted to the court's refusal to charge the eighteenth request, when counsel for the plaintiff interjected and asked the court to charge that, stating that it "may not affect the decision, but rather than have any close questions I prefer to have your honor give that instruction." The court then offered to allow the plaintiff an exception, when plaintiff's counsel again interjected:

"I don't want to except. I ask your honor to give it to them, to charge the eighteenth. It is for the jury whether it is a physical impossibility. It is all right to instruct them if they find it was a physical impossibility."

To which the court replied:

"Well, you may join in it. I still refuse to charge. I do not understand it to be the law."

Counsel for the plaintiff then asked the court to charge in substance the eighteenth request, and the court said:

"I do not entertain any oral requests. Whatever you want write it out."

To which counsel for the plaintiff said:

"All right, sir; I will have to write a lot."

When counsel for the defendant asked for an exception to a portion of the court's general charge, and counsel for the plaintiff again interrupts:

"Wait a moment. I will ask your honor to charge the request with this modification. I know your honor has in mind the Clancy Case, but still it would be safer."

The court then stated its view of the question submitted, and the defendant's counsel asked to have an exception to that, when plaintiff's counsel stated:

"That is not a charge to the jury."

The court said he did not believe the jury heard it, insisting that the jury did not hear his statement, and then, having several times refused to charge the eighteenth request, finally charged it. The defendant then excepted to a statement made in the general charge, when plaintiff's counsel again interrupts, "If your honor did say as quoted by defendant's counsel, I ask your honor to withdraw it," and to charge in a particular way stated. The court so charged, when the case was submitted to the jury.

At the end of the main charge, as delivered, there was no statement to the jury of what would be sufficient to charge the defendant's chauffeur with negligence, what act of his would justify a finding of negligence, or what it was he omitted to do which would justify such a conclusion. The defendant was entitled to have the court give the jury certain instructions upon these points. Whether plaintiff's counsel consented, or did not consent, was entirely immaterial. He had no right to insist on the court's giving any particular instructions at the request of the defendant; and his continued interjection of what he consented

to, when the court was considering the defendant's requests, was unauthorized and evidently destroyed to a large extent the effect upon the jury of the statements made by the court. His insisting on the court's charging a request which the court considered was not the law, his insisting on the court's changing its charge, with the statement in the presence of the jury that it did not make any difference whether the court charged the request or not, was improper and tended to divert the minds of the jury, so that it was possible that the defendant would not have the benefit of the rules of law laid down by the court for their guidance.

From the beginning of the trial to the end it was the plaintiff's counsel who assumed the direction of the trial, assumed to instruct the court and the defendant's counsel as to how the trial should be conducted, and assumed to decide what the court should charge and should not charge; and the ineffective attempts of the defendant's counsel to have the plaintiff's counsel restricted to his proper function—to have the constant interruptions and improper assumptions in the questions asked of the plaintiff's counsel rebuked or stopped—met with no encouragement from the court. An examination of this whole record has convinced us that the jury had not, and could not have, from anything that happened upon the trial, an intelligent idea of the question which they were required to determine; but they were allowed to approach the final consideration of the case without such specific instructions as would require a finding of some specific act of negligence which was the proximate cause of the injury. The action being based on negligence, to entitle the plaintiff to recover, there must have been a finding, sustained by the evidence, either that the chauffeur was negligent in the operation of this machine at the time in question—in other words, that he did some act which a prudent person would not have done, or omitted some act which a prudent person would have done in the operation of this omnibus—or that in some other respect the defendant or its agents were negligent.

The court charged that the skidding of the omnibus was not of itself evidence of negligence, and on the proof it is difficult to see how the skidding of the omnibus would have been prevented by any act of the chauffeur. If he put on the brakes to reduce the speed of the machine, that certainly was not evidence of negligence. Yet the evidence is uncontradicted that, in a condition of this kind, with the slippery pavement which then existed, skidding was likely to result from an application of the brakes. If the chauffeur had not attempted to regulate the speed of the omnibus by the application of the brakes, there would be a question as to whether failure to reduce the speed was not evidence of negligence. There is no evidence that the omnibus was going at an excessive or unusual rate of speed, and there is no suggestion of anything that the chauffeur did not do that he could have done to avoid this accident. Accepting the evidence of the defendant's witnesses—and I cannot see that there is any evidence to contradict their testimony—and applying the law of the case as stated to the jury by the court, there is a serious question presented whether there was any evidence to sustain a finding that the chauffeur was guilty of negligence

in the operation of this machine which was the proximate cause of the injury. If the jury should find that, in consequence of the size of the machine, the condition of the pavement, and the motive power used, the machine could not be controlled so as to prevent an accident of this kind, there was a question for the jury as to the defendant's negligence. If they should find that it was negligence for the defendant to use such a machine in the prosecution of its business so that a person lawfully on the sidewalk is mowed down by it in consequence of its operation which could not, by the exercise of due diligence, be so regulated that it could not be kept from the sidewalk, causing injury to people there, the defendant would be liable. Assuming that these questions are presented in the case, they are clearly questions for the jury to be determined by them, where they can have an opportunity of determining them free from the influences of continued charges of bad faith and perjury not sustained by anything that appeared on the trial. The orderly administration of justice requires counsel for the respective parties to honestly and in good faith assist the court and jury in determining the questions at issue, and where the position of counsel in a case on trial before a jury is so grossly abused as it was in this case, and where an appeal is made by counsel, both during the examination of the witnesses and in an address to the jury to excite their prejudices, rather than to the elucidation of questions of fact which were at issue, without obtaining redress, we feel that the ends of justice require that the case should be again tried, when it can be intelligently and clearly presented for a final determination.

It follows that the judgment appealed from is reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.