■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARY WILSON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Dufficy, J.), rendered September 7, 1982, convicting her of manslaughter in the second degree, criminally negligent homicide, reckless endangerment in the first degree, and endangering the welfare of a child, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered; no questions of fact have been raised or considered.

The defendant and her husband, Elbert Wilson, were jointly charged, *inter alia,* with manslaughter in the second degree, criminally negligent homicide and reckless endangerment in the first degree with respect to the abuse, neglect and subsequent death of their 2½-year-old son Anthony. The charges against Elbert Wilson were severed and he was tried separately, prior to the defendant's trial. Although at her trial, the defendant conceded the underlying factual allegations with respect to her abuse and neglect of the infant, she argued, as her sole defense, that she was not criminally responsible for her conduct by reason of mental disease or defect. The jury, however, rejected that proffered defense and found her guilty. On appeal, the defendant contends that she was deprived of the effective assistance of counsel to which she was constitutionally entitled. We agree, and now reverse the defendant's judgment of conviction.

It has been consistently recognized that "[w]hat constitutes effective assistance is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation" *(People v Baldi,* 54 NY2d 137, 146; *People v Droz,* 39 NY2d 457). Accordingly, "the courts have been reluctant to brand an attorney's performance as ineffective when the course of conduct complained of can be characterized as a strategy or trial tactic which was simply unsuccessful" *(People v Ofunniyin,* 114 AD2d 1045, 1047). As the Court of Appeals has observed, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the presentation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" *(People v Baldi, supra,* at 147). Review of the record at bar, however, clearly reveals that the defense counsel's performance fell below that level of competence necessary to satisfy the constitutional standard of meaningful representation.

From its inception, counsel's representation was directionless and ineffectual, betraying an absence of diligence and foresight in the preparation of the defendant's case for trial. Most egregious in terms of counsel's failure to adequately assess the consequences of his actions, was his inexplicable pretrial decision to permit the defendant to offer self-inculpatory testimony at Mr. Wilson's trial, resulting in the strategically gratuitous waiver of the defendant's ability to mount a

defense based upon factual innocence. This crucial decision was made well before counsel's decision to rely on a theory that the defendant was not responsible by reason of mental disease or defect as her sole reply to the charges against her.

It was only while the defendant was actually on the stand at Mr. Wilson's trial, conceding her primary responsibility for the neglect of the infant, that counsel, for the first time, determined that the defense of mental disease or defect was a viable one. Thereafter, at the defendant's own trial, the prosecutor introduced her damaging former testimony and the jury specifically requested a rereading of it during its deliberations. Prior to permitting the defendant to assume the stand at Mr. Wilson's trial, the defense counsel had not undertaken to have the defendant examined by a psychiatrist as an aid in reaching an informed decision with respect to the viability of relying on a mental disease or defect theory. It is therefore apparent that counsel "failed to conduct a legally sufficient investigation which would [have] allow[ed] him to make such a strategy decision" (*Mauldin v Wainwright,* 723 F2d 799, 800). As the Court of Appeals has observed, a defendant is entitled "to have counsel 'conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial' " (*People v Bennett,* 29 NY2d 462, 466, quoting from *Coles v Peyton,* 389 F2d 224, 226, *cert denied* 393 US 849).

At this defendant's trial, counsel's performance displayed a lack of preparation and an unfamiliarity with the law relating to the defense of mental disease or defect. He jeopardized the introduction of any evidence with respect to that defense by failing to timely file a notice pursuant to CPL 250.10. In making an application to serve the late notice, counsel stated that he was under the mistaken impression that the statutory notice was required only where expert testimony was to be advanced in support of the defense. After obtaining permission to serve the late notice, counsel informed the jury in his opening that he would place no reliance upon expert witnesses, or "hired guns" as he described them, but would instead call the defendant to the stand, from whose testimony, he argued, the jury would conclude that "anyone who would do such a terrible thing to their own flesh and blood is certainly suffering from a mental disease or mental defect". As the trial progressed, however, and the nature of counsel's representation became apparent, the court, *sua sponte,* repeatedly questioned the wisdom of the defense counsel's decision

to eschew reliance upon expert testimony, stating at one point that "I want to make sure [the defendant] is adequately represented". Counsel replied that the defendant's own testimony "will raise the issue of psychiatric soundness sufficiently". On more than one occasion counsel informed the court that neither he nor anyone from his office had asked the defendant to undergo any psychiatric examination. In this respect we note that the Court of Appeals has suggested that the failure of an attorney to have a defendant's mental capacity evaluated by a psychiatrist in a case in which the defense of mental disease or defect is asserted presents a "colorable claim of ineffective assistance" *(People v Rentz,* 67 NY2d 829, 831; *see also, Mauldin v Wainwright, supra,* at 800). Subsequently, the trial court expressed its concern, again *sua sponte,* when it realized that counsel was about to commence his examination of the defendant without having reviewed the report prepared by the People's examining psychiatrist. It was only at the court's insistence that counsel agreed to review the document prior to his examination of the defendant.

On their direct case, the People called Elbert Wilson. Although Mr. Wilson's attorney had stated that Mr. Wilson would invoke his privilege against self-incrimination on the stand, the defense counsel raised no objection to his being called to testify. Counsel similarly failed to object when the prosecutor, after obtaining a ruling that Mr. Wilson was a *hostile witness,* asked a series of leading questions with respect to the defendant's abuse of the infant. Mr. Wilson repeatedly invoked his Fifth Amendment rights during the prosecutor's examination.

Moreover, counsel's summation was confused and ineffectual and was equivalent to no summation at all. In addressing the jury, counsel reread, without apparent purpose, the entire indictment, summarized the largely irrelevant testimony of several witnesses, and thereafter argued, as his principal contention in support of acquittal, that "the act of killing your own flesh and blood over a period of time, watching your own flesh and blood die before your very eyes is sick". Counsel's subsequent attempt to grapple with the subtle complexities presented by the proof concerning the defendant's state of mind was *patently* superficial and was neither assistive nor competent. Illustrative of counsel's failure to coherently organize his thoughts and apprise the jury of the proper standard to be applied in assessing the defense of mental disease or defect was his statement that "I think we have reason to

doubt whether or not, based on Mary Wilson's testimony, whether or not she was crazy, nuts, mentally diseased or defective, psychotic, neurotic, whatever terms they want to use". In sum, counsel's performance did not afford the defendant the meaningful representation to which she was constitutionally entitled.

Additionally, we conclude that the court erred in permitting the People to elicit—over defense counsel's objection—testimony with respect to the defendant's mental capacity from a "forensic psychologist", whose psychiatric evaluation of the defendant was premised solely upon courtroom observation of the defendant's trial testimony and certain unidentified records not admitted into evidence. When the prosecutor proposed that the forensic psychologist offer an opinion based upon courtroom observation, the defense counsel vigorously objected, arguing that the witness was incompetent and requesting that the prosecutor make an offer of proof as to the expert's "ability to testify at this trial based on the observations of my client in the courtroom". The prosecutor merely replied, in substance, that the testimony would be helpful to the jurors in order to "explain to them what an expert concludes based on those same observations". No offer of proof was made with respect to the psychologist's ability to render a reliable opinion premised upon her observation of the defendant's testimony. Nor was an explanation provided as to why no examination had been arranged by the People prior to their offering the psychologist's testimony.

While the admissibility of expert testimony is generally a determination which rests in the sound discretion of the trial court *(see, e.g., People v Cronin,* 60 NY2d 430), it is nevertheless incumbent upon the proponent of such testimony to lay a proper foundation establishing that the processes and methods employed by the expert in formulating his or her opinions adhere to accepted standards of reliability within the field *(see, People v Brown,* 67 NY2d 555, *cert denied* — US —, 107 S Ct 1307; *People v Hughes,* 59 NY2d 523, 537; *People v Leone,* 25 NY2d 511). The psychologist in question testified that she had employed the diagnostic technique of courtroom observation as a predicate for an expert opinion on only one prior occasion. Prior to testifying, she filed no written report. At bar, the record is devoid of evidence tending to establish that a diagnosis premised upon courtroom observation has attained any measure of scientific recognition as a reliable substitute for a clinically derived evaluation of a subject's mental processes *(cf., United States v Albright,* 388 F2d 719, 725; *Roller-*

*son v United States,* 343 F2d 269, 274; *see generally,* Slovenko, *Witnesses, Psychiatry and the Credibility of Testimony,* 19 U Fla L Rev 1, 15; McCormick, Evidence § 45, at 96 [2d ed 1972]). We note, further, that a diagnostic technique which features courtroom observation of trial testimony as its principal evaluative tool, necessarily requires the nonexamining medical expert to comment extensively upon the defendant's testimony concerning the ultimate issue to be resolved in the case, thereby potentially impinging upon the jury's role as trier of fact *(cf., People v Kampshoff,* 53 AD2d 325, 330, *cert denied* 433 US 911).

Moreover, shortly after being called to the stand, it was revealed that the psychologist who observed the defendant's testimony had been supplied with various documents, upon which, in part, her opinion was based. These documents, which were provided to the defense counsel only after the psychologist took the stand on direct examination, were never identified and were never offered for admission into evidence. Although in *People v Sugden* (35 NY2d 453) the so-called strict rule of *People v Keough* (276 NY 141) was relaxed to permit testimony based upon certain material "of out-of-court origin", such material must necessarily be of the type reasonably relied on by experts in the field-forming opinions or inferences on the subject *(People v Sugden, supra,* at 460-461; *see also, Hambsch v New York City Tr. Auth.,* 63 NY2d 723, 726; *Holshek v Stokes,* 122 AD2d 777, 779; *Borden v Brady,* 92 AD2d 983, 984). At bar, it is impossible to ascertain precisely what information these documents may have contained and therefore to determine if they were properly relied on by the expert in formulating her opinion *(Hambsch v New York City Tr. Auth., supra,* at 726).

Thus, the court erred in admitting the testimony of the People's forensic psychologist.

For the foregoing reasons, the judgment appealed from must be reversed and a new trial ordered. Bracken, J. P., Kunzeman, Kooper and Spatt, JJ., concur.