(December 27, 2011)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE OLIVERAS, Appellant. [936 NYS2d 12]—

Defendant did not receive adequate assistance of counsel under either the state or federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]). The prosecution's case turned almost entirely on its ability to convince the jury that defendant's inculpatory statements, extracted after hours of interrogation, were reliable and voluntary. Defense counsel argued that defendant's will had been overcome by the police as a result of what he referred to as defendant's "mental history." Yet defense

counsel failed to take any steps whatsoever to obtain defendant's relevant psychiatric and educational records, or to consult with an expert psychiatrist or psychologist in support of the defense because, counsel claimed, the defense "stood to gain nothing" by obtaining the records.

However, the defense had everything to gain by obtaining defendant's records and consulting with a psychiatric expert to support the claim that defendant lacked the mental capacity to voluntarily confess to the crime. Defendant's medical records showed, inter alia, that defendant, at the age of 15, was admitted to and spent six months in a psychiatric hospital for "express[ing] suicidal ideation at school." His presenting problems included depression, a "history of auditory and visual hallucinations," and "multiple suicidal attempts." His psychiatrist, in a 72-hour note, reported that "[defendant] often hears a voice which he thinks is the voice of the devil . . . which tells him to kill himself." The doctor further reported that there was "a strong streak of paranoia running through [defendant's] ideation," and that he felt "people were against him at school." Defendant's educational records showed that he had been diagnosed as learning disabled and placed in special education classes, and that his IQ of 78 placed him in the "borderline" range of mental retardation. His psychiatrist described his intelligence as "normal at best but probably dull normal."

The psychiatrist retained by counsel in support of defendant's CPL article 440 motion opined, upon a review of the relevant records, that defendant's psychotic symptoms, as well as his learning disabilities and probable mental retardation, could have substantially impaired defendant's ability to process, interpret and understand his *Miranda* rights and rendered him vulnerable to suggestion and coercion.

The only evidence linking defendant to the crime were his statements. The sole eyewitness produced by the prosecution did not identify defendant as the shooter at trial, even though the witness was defendant's neighbor and had known defendant since 1987. In his call to 911, the eyewitness described the shooter as a young black man wearing a blue hoodie. Defendant, however, is a light-skinned Hispanic who was wearing a dress shirt, black jacket and blue jeans on the day of the shooting.

This was not the only inconsistency between defendant's statement and the underlying facts. Defendant stated that the victim started to reach into his coat pocket for what defendant thought was a gun; the detective, however, knew (and admitted as much during cross-examination) that this was not a true

statement because the victim had not been wearing a coat. Defendant stated that the gun used to commit the crime was a revolver, whereas the detectives knew the gun used in the crime was a .25 caliber semiautomatic.

Defense counsel testified that by obtaining defendant's psychiatric records he "would have had to turn them over to the prosecution," even if they were never introduced at trial. However, the statute provides that such records need be disclosed only "if the defendant intends to introduce such report or document at trial, or if the defendant has filed a notice of intent to proffer psychiatric evidence" (CPL 240.30 [1] [a]). Defense counsel's evident misapprehension of the law cannot be viewed as a strategic decision (see Kimmelman v Morrison, 477 US 365, 385 [1986] ["(c)ounsel's failure to request discovery, again, was not based on 'strategy,' but on counsel's mistaken beliefs that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense"]).

Even if counsel intended to proffer the evidence at trial, defense counsel's concern that statements in the record could "bounce back" at defendant was unfounded since counsel could have obtained a ruling in limine to prevent prejudicial but irrelevant material coming into evidence. The only records that would be admissible would be those limited to the issue of defendant's mental state as it pertained to the voluntariness of defendant's confession.

Defense counsel's alleged reasons for failing to obtain the psychiatric records are not compelling. Defense counsel maintains that he thought there was enough in the record to make his case without resort to experts or to the medical records. However, defense counsel never consulted an expert or reviewed the medical records in arriving at this conclusion. His feeling that he was "better off" not doing so cannot be deemed a reasonable trial strategy.

In denying the defense's motion to suppress defendant's statements, the court expressly cited, as the basis for its ruling, the fact that no medical records documenting defendant's mental illness had been produced prior to or during the Huntley hearing. The trial court, in denying defendant's motion to serve late notice of a psychiatric defense, cited the defense's failure to consult a psychological expert or to obtain the relevant medical records.

Defense counsel did not investigate the law or the facts, and in doing so deprived defendant of meaningful representation under both the New York and federal standards (see e.g. People v Wilson, 133 AD2d 179 [1987] [counsel ineffective where, inter

alia, counsel failed to have client examined by a psychiatrist after he decided to rely only on an insanity defense]). The jurors never heard evidence concerning defendant's mental deficiencies or mental illness. Had they heard this evidence, there is a reasonable probability that the verdict would have been different.

Even absent the documentation of defendant's mental illness and low intelligence, it is clear that the jury struggled with the evidence. During the course of deliberations, the jurors sent numerous notes requesting clarification of the law and requesting evidence including defendant's statements, the 911 audiotape, the testimony of Mr. Clark, the eyewitness, and the written statement and testimony of defendant's mother. On the second day of deliberations, jurors sent a deadlock note, necessitating an *Allen* charge. The jury only rendered its verdict after three days of deliberations. The prosecution's case was not strong and relied almost entirely on defendant's inculpatory statements. Defense counsel's failures, therefore, likely impacted the verdict.

In light of the above, it is unnecessary to address defendant's further contentions concerning the propriety of the court's charge to the jury, or whether the court erred in denying defendant's motion to file late CPL 250.10 notice. Concur— Gonzalez, P.J., Acosta and Manzanet-Daniels, JJ.

Saxe and Catterson, JJ., dissent in a memorandum by Catterson, J., as follows: Because I believe that the defense counsel's decision not to obtain psychiatric records in this case reflects a reasonable and legitimate trial strategy, the defendant has not met his burden of showing that his counsel's performance was deficient. Therefore, I must respectfully dissent.

The defendant in this case was convicted of murder in the second degree after a jury trial. On May 8, 2007, the defendant moved to vacate his conviction pursuant to CPL 440.10 on the grounds that his defense counsel (1) failed to obtain his psychiatric, Social Security, and/or educational records demonstrating that he had severe mental and educational deficits in order to challenge the voluntariness of his statements; (2) offered late CPL 250.10 notice; and (3) failed to distinguish the case cited by the People and thereby persuade the court that CPL 250.10 notice was not required to present lay testimony of defendant's mental and educational history.

At a January 8, 2009 evidentiary hearing on defendant's CPL 440.10 motion, defendant's trial counsel testified to the following: As of April 7, 2000, defense counsel's strategy was to "attack the voluntariness" of defendant's statements to the police

by showing that defendant suffered from mental illnesses all his life. However, shortly after defense counsel indicated his intention to the court and the prosecution that he would seek medical records, his client, the defendant, "shut [him] down" and flatly rejected that strategy.

Defense counsel testified that he agreed with the defendant partly because he was concerned at the time that the records would not be beneficial, but on the contrary might harm the defense by showing that defendant was violent. Defense counsel also asserted that, in his experience, it was often a more effective strategy to "giv[e] the jury a good gut feeling" rather than "getting bogged up in" a battle of expert witnesses. Counsel then developed a new strategy of adducing lay witness testimony from the defendant's mother "to build in the minds of the jury, in that [defendant] was somebody who had no work history, was on SSI, . . . had a grade school education at the most, and he was in special ed[ucation], I think, and had . . . some hospitalizations . . . that he's somebody whose mind could be played with."

Defense counsel further explained that although he knew that he was required to provide CPL 250.10 notice to present a psychiatric defense, he did not believe that notice was required to establish mental illness through a lay witness. However, not wanting to risk being precluded, he moved to provide late CPL 250.10 notice. Although the motion was denied, at trial, the court permitted defense counsel to establish through the testimony of the defendant's mother, that defendant "only had an eighth grade education," that "he was in special education," that he "received treatment at Bronx Psychiatric clinic[ ]," that he had no work history, and that he "was on disability and received SSI payments." Defense counsel also pointed to indicia of coercion such as the defendant's inconsistent statements, and evidence that the police tricked the defendant's mother into permitting him to be interrogated without an attorney present and played "good cop/bad cop" during the interrogation. Defense counsel explained that if he could get the jury to see that the defendant was "not playing with a full deck" and that the "cops . . . took advantage of it," then he could secure an acquittal.

By order dated June 4, 2009, the motion court denied defendant's CPL 440.10 motion in its entirety. The motion court accepted defense counsel's testimony as "credible, reliable, truthful, and uncontroverted," and concluded that defendant was not denied effective assistance of counsel. The court further found that counsel "had a reputation as an able and experienced at-

torney who practiced criminal defense in Bronx County for over forty years."

I see no reason to disturb the motion court's credibility determinations on appeal. In my view, the hearing court correctly found that the defense counsel's decision not to obtain the defendant's psychiatric records and his decision to rely on lay testimony to establish the defendant's mental deficiencies was a reasonable and legitimate defense strategy.

Defense counsel is deemed to have satisfied the constitutional mandate of effective assistance "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation." (*People v Baldi*, 54 NY2d 137, 147 [1981].) So long as counsel's performance reflects a "reasonable and legitimate strategy under the circumstances and evidence presented, even if unsuccessful, it will not fall to the level of ineffective assistance." (*People v Benevento*, 91 NY2d 708, 713 [1998].) Thus, it is the defendant's burden to " 'demonstrate the absence of strategic or other legitimate explanations' for counsel's alleged shortcomings." (*Benevento*, 91 NY2d at 712, quoting *People v Rivera*, 71 NY2d 705, 709 [1988].)

Given the constraints placed on defense counsel by the defendant and the potentially adverse consequences that might have resulted from pursuing a formal psychiatric defense, in my opinion the strategy that counsel adopted was reasonable under the circumstances. The jury heard testimony concerning the defendant's mental deficiencies, limited educational background, and psychiatric hospitalization. This evidence permitted counsel to advance a persuasive argument that the police exploited the defendant's deficiencies and that his confession and statements were not voluntary. Thus, in my opinion, neither the failure to request psychiatric records or to consult with a psychiatrist, nor the denial of the defendant's application to file a late CPL 250.10 notice, could have prejudiced the defendant to the extent that he did not receive a fair trial. (*See Benevento*, 91 NY2d at 713 ["(t)he question is whether the attorney's conduct constituted ' " 'egregious and prejudicial' " ' error such that defendant did not receive a fair trial" (citations omitted)].)