OPINION OF THE COURT
Frank J. LaBuda, J.
Defendant has requested the court to allow a psychiatric expert witness, Dr. Kevin Smith, M.D., to observe the testimony of Scott Sherwood, and then testify on behalf of defendant with regard to Sherwood’s medical history as demonstrated by his medical records and treatment, and his opinion with regard to Sherwood’s credibility for his taped interview and trial testimony and his observations of the witness at trial. For the reasons stated below, defendant’s request is granted in part with express limitations.
The cold case file of the death and arson of Catherine Novak was revived on April 4, 2012, when a young woman[1] called the New York State Police in Liberty, New York, and recanted her statements and alibi for Paul Novak, her estranged paramour, and “confessed” to her role and knowledge of the murder of Catherine Novak, the estranged wife of the defendant herein, Paul Novak. The defendant was indicted on October 24, 2012 for the December 13, 2008 murder of his wife, and charged with murder in the first degree, murder in the second degree, arson, burglary, larceny and insurance fraud. Sherwood was also indicted as a codefendant and was charged with murder in the second degree, arson and burglary. After lengthy plea negotiations, Sherwood pleaded guilty on the eve of Novak’s trial to a separate superior court information, pursuant to a cooperation agreement,[2] to conspiracy to commit murder, for which he *739 agreed to testify against defendant at trial, and for which he will receive a sentence of 3 to 12 years in state prison.[3]
Although Sherwood was a licensed and functioning paramedic and EMT in New York City, it is not disputed that Sherwood has a long, significant mental, psychological and emotional history, including depression, anxiety, and bipolar disorder, and takes prescription medications for these disorders, including psychotropic medications. Defendant argues that it is necessary for his expert, Dr. Kevin Smith, to observe Sherwood’s testimony so he can assist the defense with fashioning an appropriate cross-examination as to Sherwood’s testimony, given his mental state and medications, and then testify on behalf of defendant to explain Sherwood’s veracity and vulnerability to suggestion when under stress due to his mental disorders.
It has long been established in New York that excluding a witness from the courtroom during the examination and testimony of other witnesses is at the sole discretion of the court. (Philpot v Fifth Ave. Coach Co., 142 App Div 811 [1st Dept 1911]; People v Cooke, 292 NY 185 [1944].) While the Federal Rules of Evidence allow for an expert to observe the testimony of other witnesses during a trial (Fed Rules Evid rules 615, 702) — under the federal rules, a party may request exclusion of an expert during the testimony of a lay, fact witness, but experts are generally allowed to remain in the courtroom during another expert’s testimony — the New York rules of evidence, as well as case law, do not. Whether an expert witness may remain in the courtroom during other witnesses’ testimony, expert or lay, is left to the sole discretion of the trial court. Although New York considered codifying the federal rules regarding allowing the presence of an expert witness to remain in the courtroom during the testimony of other witnesses, to date, no rules have been adopted; there is no statutory authority in New York on this issue.
The purpose of sequestration, or exclusion of witnesses from the courtroom during other witnesses’ testimony, is to prevent a prospective witness from “being taught by hearing another’s testimony.” (People v Medure, 178 Misc 2d 878, 880 [Sup Ct, Bronx County 1998].) This is a particular concern when lay, fact witnesses listen to other lay, fact witnesses; the only safeguard to preventing later testifying witnesses from tailoring their *740 testimony is to exclude them from the courtroom prior to giving their own testimony. The Court of Appeals has held, however, that “[t]he same reasons for exclusion do not apply to expert witnesses.” (People v Santana, 80 NY2d 92, 100 [1992].)
“[T]he presence in the courtroom of an expert witness who does not testify to the facts of the case but rather gives his opinion based upon the testimony of others hardly seems suspect and will in most cases be beneficial, for he will be more likely to base his expert opinion on a more accurate understanding of the testimony as it evolves before the jury.” {Id.)
“[W]ithout the assistance of a psychiatrist to . . . present testimony, and to assist in preparing the cross-examination of a State’s psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high.” {Id. at 99.)
Regardless of whether New York trial courts allow an expert to observe the trial testimony of other witnesses, expert or lay, the Court of Appeals, as well as the Appellate Divisions, have consistently held such a decision is in the discretion of the trial court, depending on the nature of the case as well as the proposed subject matter of the expert’s testimony. Because there is no statutory scheme on this issue in New York, state and federal case decisions vary. For example, in affirming a decision by the Court of Appeals excluding a potential witness from the courtroom and finding no violation of a defendant’s Sixth Amendment rights, the Federal District Court, in Baker v Fischer (2012 WL 1909286, *8, 2012 US Dist LEXIS 73322, *21-22 [WD NY, May 25, 2012, No. ll-CV-6295 (MAT)]), stated,
“The exclusion of potential witnesses during the testimony of other witnesses is routine during criminal trials, and is important because it negates the possibility that their testimony will be tainted or influenced by their having observed other witnesses’ testimony on the same or similar topics. . . .
“[T]he New York Court of Appeals reasonably found that the exclusion of [the potential witness] from the courtroom . . . did not contravene Sixth Amendment courtroom-closure jurisprudence.” (Citations omitted.)
On the other hand, in Malek v Federal Ins. Co. (994 F2d 49 [2d Cir 1993]), a civil matter, the plaintiffs requested that the court allow their fire expert to be present in the courtroom during the defendants’ fire expert’s testimony. They argued that *741 their expert’s presence was “necessary to assist ... in preparing . . . cross examination].” (Id. at 54.) The District Court denied the plaintiffs’ request and ordered all of the witnesses to leave the courtroom. Commenting on former Federal Rules of Evidence rule 615 (3),[4] the Second Circuit Court of Appeals noted, “The advisory committee notes specify that the exception [to sequestration of a witness] contemplates ‘an expert needed to advise counsel in the management of the litigation.’ ” (Id. [emphasis added], citing Trans World Metals, Inc. v Southwire Co., 769 F2d 902, 911 [2d Cir 1985].) Finding that the District Court erred in denying the plaintiffs’ request, the court stated,
“Our review of the record reveals that [the defendant’s expert’s] testimony differed from his reports: [the expert] testified that the fire was an ‘intense fire’ but did not make that specific finding anywhere in his report. Since this was an important finding bearing on the question of arson and was not made in [the defendant’s expert’s] reports, [the plaintiffs’ expert’s] presence in the courtroom was important to the presentation of the [plaintiffs’] case . . . .” (Id.)
There is no question that “[a criminal] defendant has a fundamental right to call witnesses in his own behalf.” (People v Palmer, 272 AD2d 891, 891 [4th Dept 2000] [citations omitted].) It may be reversible error to preclude testimony of a criminal defendant’s witness who was present during other witnesses’ testimony, even when the witness violated an order of sequestration. (Id.) Reversible error is further supported when “ ‘the prosecutor fail[s] to show how the People would have been prejudiced by having [the witness] testify.’ ” (Id. [citation omitted].) The ultimate decision, however, is always left to the discretion of the trial court and based on the specifics of each case.
A court must consider whether, if an opposing witness were permitted to listen to testimony prior to his own testimony, he would “ascertain the precise points of difference between their testimonies, and could shape his own testimony to better advantage for his cause.” (People v Medure, 178 Misc 2d 878, 880 [Sup Ct, Bronx County 1998].) This standard assumes both witnesses will be testifying as to the same facts and have oppos *742 ing views. (See Malek v Federal Ins. Co.) Despite this risk, and the difficulty counsel may encounter during cross-examination in exposing inconsistencies, inaccuracies and falsehoods, the federal rules state that experts whose “presence is shown . . . to be essential” may not be excluded. (People v Medure, 178 Misc 2d at 881.) Although an essential witness can learn partiality in the courtroom, “the issuance of an order of exclusion [in New York] is committed to the discretion of the court and is not demandable as of right.” (Id. [citations omitted].) “[A] party opposing exclusion shoulders the burden of convincing the court, first, that a particular witness is essential and, second, that his presence will not prejudice the party opposed to his presence in the courtroom.” (Id. at 882.) Likewise, a party seeking exclusion must show how an expert’s presence in the courtroom would prejudice their case. (See People v Palmer.) In this case, the defendant’s proposed witness is not a fact witness and will be called for the specific purpose of expert medical/psychiatric testimony regarding specific mental illnesses and medications taken by the prosecutor’s key witness, Scott Sherwood, and to what extent they may impact upon his ability to testify. Thus he will not be excluded from observing Sherwood testify (People v Medure).
On the issue of Sherwood’s mental illnesses and the anticipated testimony of Dr. Smith as an expert with regard to Sherwood’s illnesses and medications:
“The mere fact that one is insane or mentally ill does not per se disqualify him from testifying. He may give evidence, provided only that he has sufficient intelligence to understand the nature of an oath and to give a reasonably accurate account of what he has seen and heard vis-á-vis the subject about which he is interrogated.” (People v Rensing, 14 NY2d 210, 213 [1964].)
The jurors in Rensing did not know about the witness’ long history of mental illness, and convicted Rensing of first degree murder. Rensing was sentenced to death. Reversing and remanding for a new trial, the Court of Appeals indicated that, had the jurors known of the codefendant’s long history of mental illness, at the very least, “they would have been in a position to assess and evaluate the testimony given by him and not accept it . . . .” (Id. at 213-214.) In the present case, the defendant argues that the jury has the right to know of and to understand the long history of mental illness of Sherwood, a codefendant, and what medical/psychiatric effect it may have on his testimony and his recorded confession.
*743 Whether a psychiatric expert is allowed to observe the testimony of other witnesses, expert or lay, “it is abundantly clear that whether or not a particular witness is telling the truth is a conclusion to be drawn solely by the jury, and an opinion which is exclusively within their province to render.” (People v Kampshoff, 53 AD2d 325, 330 [4th Dept 1976].) The Kampshoff Court continued, “under no circumstances could [the expert] testify that it was his opinion that [the witness] lied on the stand.” (Id.) The Appellate Division, Second Department, has ruled that an expert may not testify with regard to a witness’ mental state after having observed the witness’ testimony at trial. (People v Wilson, 133 AD2d 179 [2d Dept 1987].) In Wilson, the appellate court reversed the defendant’s conviction based on the trial court’s error of allowing a forensic psychologist to render an expert opinion on the psychological state of the defendant even though he had not examined the defendant personally and had only observed the defendant’s courtroom testimony. (See also People v Cronin, 60 NY2d 430 [1983].)
In the case at bar, while there is no evidence that Sherwood was unable to work[5] nor understand the nature of the oath[6] due to his mental illnesses and medications, or that during the time period surrounding the murder of Catherine Novak he was suffering from any mental or medical condition, defendant maintains that Sherwood has numerous mental and emotional conditions and medications that affect his ability as a witness. Unlike the situation in Wilson, however, the defense in this case seeks to have his witness observe a prosecution witness.
Defendant argues that Dr. Kevin Smith’s observation of Sherwood’s testimony is necessary to allow Dr. Smith to assist defense counsel with preparing cross-examination of this witness; and that Dr. Smith will only testify as to medical and or psychiatric and pharmaceutical issues as they impact upon Sherwood’s veracity and mental state. The People concede that the presence of an expert in the courtroom for the purpose of assisting defendant with his cross-examination of Sherwood is permissible, and that the introduction of expert testimony in connection with an explanation of the general diagnosis of Sherwood is *744 admissible. The People argue, however, that state law prohibits defendant from having the same expert who assists with cross-examination later testify with respect to his observations of Sherwood. The People also argue that defendant cannot introduce the testimony of any expert who has made no clinical examination of Sherwood, with respect to any particular manifestations of the medical diagnoses of Sherwood upon his own ability to perceive, recall or relate past events or upon his veracity. The People also argue that an expert’s observation of a taped police interview and courtroom testimony are no substitute for a clinical psychological examination, which was not by defendant’s expert of Sherwood in this case.
It cannot be gainsaid that Sherwood is a key and indispensable witness for the prosecution. The People indicted him as a codefendant in the murder of the victim because he confessed to knowing of the defendant Novak’s plan and assisted him by using his own vehicle to drive with Novak to Narrowsburg, waited in the vehicle while Novak allegedly murdered his wife and set the house on fire, and then drove back with Novak to Nassau County. Because of the lack of forensic evidence in this case due to the fire’s total destruction of the entire house, its contents and the severe charring of the victim, the People must heavily rely on the testimony of two witnesses (coconspirators) who claim to have had prior knowledge of Novak’s alleged plan, and both[7] of whom allegedly participated to varying degrees in carrying out the plan and providing an alibi.
The Appellate Division, Second Department, has passed upon the particular issue now at bar, ruling that an expert may not testify with regard to a witness’s mental state after having observed the witness’s testimony at the trial. (People v Wilson, 133 AD2d 179 [1987].) In Wilson, the Appellate Division, Second Department, reversed defendant’s conviction, holding that the trial court erred in allowing a forensic psychologist to render an expert opinion as to the psychological state of defendant where no clinical examination of the defendant by the expert had been undertaken, but where the expert observed defendant’s courtroom testimony. The Court held that
“[w]hile the admissibility of expert testimony is generally a determination which rests in the sound discretion of the trial court (see, e.g., People v. Cronin, 60 NY2d 430), it is nevertheless incumbent *745 upon the proponent of such testimony to lay a proper foundation establishing that the processes and methods employed by the expert in formulating his or her opinions adhere to accepted standards of reliability within the field (see, People v. Brown, 67 NY2d 555, cert denied [479] US [1093], 107 S Ct 1307; People v. Hughes, 59 NY2d 523, 537; People v. Leone, 25 NY2d 511).” (Id. at 183.)
The Court found that such testimony is impermissible, not only because there is no evidence to “establish that a diagnosis premised upon courtroom observation has attained any measure of scientific recognition as a reliable substitute for a clinically derived evaluation of a subject’s mental processes” (id.), but also because “a diagnostic technique which features courtroom observation of trial testimony as its principal evaluative tool, necessarily requires the nonexamining medical expert to comment extensively upon the defendant’s testimony concerning the ultimate issue to be resolved in the case, thereby potentially impinging upon the jury’s role as trier of fact.” (Id. at 184.)
Therefore, out of an abundance of caution in protecting the defendant’s Sixth Amendment rights in this first-degree murder trial, this court will allow Dr. Kevin Smith, M.D. to observe the testimony of Sherwood for the purpose of assisting defense counsel with preparing cross-examination of this witness, and allow the defendant to call Dr. Smith, M.D. as an expert medical/ psychiatric witness under limited circumstances. Dr. Smith, M.D. may not testify as to Sherwood’s veracity, nor comment on the truthfulness of his testimony or any other aspect of Sherwood’s testimony. (See People v Williams, 6 NY2d 18, 22, 23 [1959].) If defendant proposes to have Dr. Smith testify as a medical expert as to generalities regarding the accepted medical/ psychiatric characteristics of people with mental disorders or medical conditions and medications, the same or similar to Sherwood’s, particularly regarding the issue of truthfulness, then the court will afford the People, if requested, a Frye hearing to first determine the general scientific reliability of such a medical/psychiatric thesis before the jury will be “subjected to its influence.” (Id. at 26.)
As stated by the Court of Appeals,
“[W]e do not go so far here as to hold that such expert testimony may never be admissible only because it is upon a collateral matter. For justice would seem to require that, if it is demonstrated to *746 be the scientific consensus that [those with the same conditions as the witness] are unworthy of belief, the defendant is entitled to place that fact before the jury.” (Id. at 21.)
Although witness credibility is always a collateral matter, the credibility of Sherwood is of paramount importance to the guilt or innocence of the defendant. In accordance with the holding in Kampshoff, this jury has the right and need to know of this witness’ long mental history and the use and effect of the pharmaceuticals used by Sherwood and have an expert medical witness testify to what the mental history means from a medical point of view and to what extent those medical and psychiatric conditions or history may impact upon a witness’ ability to testify. It must be noted that in the case at bar, the jury will hear about Sherwood’s psychiatric history both on direct and cross-examination. Since the jury will hear extensive direct examination of Sherwood’s long mental history the concerns raised in Reusing, regarding a jury unaware of a long mental history, are not present here.
This court has expressed concern with respect to the potential prejudice the People would suffer should defendant’s expert be permitted to observe the testimony of the codefendant Sherwood. The People submit that such prejudice would be severe and would deprive the People of their right to a fair trial should defendant’s expert be permitted to later testify and render an expert opinion before the jury, based, in any part, upon the trial testimony of Scott Sherwood. Because Dr. Smith has never personally met nor conducted a clinical examination of Scott Sherwood, his testimony of his observations of the trial testimony would impermissibly purport to supplant such clinical examination (see Wilson). The observation of a taped police interview and courtroom testimony cannot substitute for a clinical psychological examination. Dr. Smith will not, at any point prior to rendering testimony in connection with this case, have had any interactive examination with Sherwood, and will have administered no generally accepted preexamination or preassessment psychological evaluations of Sherwood prior to forming a scientifically reliable expert opinion with regard to Sherwood’s psychological diagnoses and his abilities as a witness. Without having conducted such a clinical examination of Sherwood, it would be improper for this court to allow the expert to testify with respect to (i) whether Sherwood exhibits any particular signs of psychological disorders or (ii) whether Sherwood’s *747 testimony evidenced any impairment as a result of his prior medical diagnoses or the medications associated therewith. To allow such testimony from an expert who has conducted no clinical examination of the witness would place before the jury impermissibly speculative testimony, as well as usurp the jury’s function to determine the veracity and credibility of Sherwood’s testimony and confession.
Based on the foregoing, the defendant may properly have the assistance of an expert during his cross-examination of Sherwood, and the court will allow the same expert witness to testify generally about the ability for people with the same diagnoses and medication as Sherwood to perceive, recall and relate events. It is likewise clear that no expert medical opinion may be rendered with respect to the mental state of Sherwood at the time of his confession or testimony without having conducted a clinical examination of Sherwood. Therefore, it is submitted that an appropriately deliberated judicial decision on the issues is as follows:
1. Permission for defendant Novak to be assisted by an expert during the People’s examination and defendant’s cross-examination of Scott Sherwood;
2. Permission of expert testimony with regard to the generally accepted scientific conclusions, if such exist, with respect to the ability of persons with the same diagnoses and medications as Sherwood to perceive, recall and relate events.
3. Provisions for a Frye hearing and offer of proof, should defendant intend to question any expert with respect to the ability of those with the same diagnoses as Sherwood to render truthful or credible testimony under oath if requested by the People.
4. Provisions prohibiting such expert from making any specific reference to veracity or credibility of the witness Sherwood, or the manifestations of the defendant while testifying at trial or in the video confession of Sherwood.
Based on the foregoing it is, ordered that defendant’s application to allow his psychiatric expert, Dr. Kevin Smith, to observe Scott Sherwood’s testimony is granted; and it is further ordered that defendant may consult with Dr. Smith regarding cross-examination strategies for Sherwood; and it is further ordered that defendant may call Dr. Smith as an expert medical witness subsequent to his observation of Sherwood’s testimony after this court conducts a Frye hearing if requested by the People; and it is further ordered that Dr. Smith may not testify regard *748 ing his observations of Sherwood, during Sherwood’s testimony, his opinion of Sherwood’s veracity, or his opinion of Sherwood’s emotional or mental condition during his testimony or confession; and it is further ordered that the defendant is prohibited from presenting any expert testimony with regard to truth or veracity of Sherwood’s testimony or confession. Ordered that the defendant may present expert testimony, including that of Dr. Smith, with regard to generally accepted medical/scientific opinion regarding the ability of persons with the same diagnoses as Scott Sherwood to perceive, recall and relate events.

. Michelle LaFrance was living with the defendant Paul Novak in 2008 and moved to Palm Coast, Florida with the defendant and his children shortly after the fire and homicide.

. The prosecutor, as part of the plea bargain, also agreed to write a favorable letter to the Department of Corrections and Community Supervision in support of early release at the appropriate time.

. The indictment against Sherwood exposed him to a maximum sentence of 25 years to life in prison if convicted of murder in the second degree and will be dismissed if he provides truthful testimony at trial.

. After Malek was decided, Federal Rules of Evidence rule 615 was amended in form but not substance by, among other things, changing its numbered subdivisions to lettered subdivisions. Federal Rules of Evidence rule 615 (c) is the provision that is currently relevant to this issue.

. Outside his professional working experience as a New York City EMT and paramedic.

. Sherwood waived indictment and appeal and fully allocuted under oath his guilt with respect to a superior court information and the cooperation agreement.

. The codefendant Sherwood and the unindicted coconspirator, Michelle LaFrance.